The next case is number 2007-1214, the Oatey Company v. IPS Corporation. Mr. Campbell. Thank you, Your Honor. This case is about Oatey's invention of a washing machine outlet box. It did something that really reduced the cost of outlet boxes before. Made them simple to install. Outlet boxes before Oatey's invention were like putting together a jigsaw puzzle. If you've ever put in plumbing that has a lot of little pieces, a lot of little turns, you have to fit them all with many different welds, sometimes as many as seven different welds, to make them work. Oatey's invention was that you take a simple, single drain, and you are able to make multiple drain fluids drain into one drain. They call it a tailpiece. The tailpiece surrounds these multiple ports. By doing that, Oatey came up with the invention that a plumber now only had to make one weld. Instead of having this big jigsaw puzzle, everything is combined into one. It made it very, very easy to install. Oatey went to great lengths to explain what the invention was, and explain that there are two embodiments of the invention. In fact, throughout the patent, they make it very, very clear that there are two different embodiments of this one invention. In fact, in the summary of the invention, which uses the operative claim language, which we're probably going to talk about mostly today, it says, more particularly, the present invention includes a washing machine outlet box, having a housing at the bottom wall, and a first and second juxtaposed drain ports in the bottom wall. Now, that key uses exactly the same language from claim one, first and second juxtaposed drain ports in the bottom wall. And then it goes on to say that there are two different ways of forming these two drain ports, these two juxtaposed drain ports in the bottom wall. One, you can have an insert which fits over the outlet, and then it has two little pop-off drain ports, and it makes separate identifiable physical elements, like the core found in the preferred body that was limited to. But it goes on to say, by definition, you can have a different way of producing these two drain ports, these two drain ports that are juxtaposed in the bottom wall. And it says, and I'm quoting, it may be noted, however, that if a test cap is not used, the oblong opening in the bottom wall, in conjunction with the tailpiece, may itself define the drain ports. Odie could not have been clearer to a person of ordinary skill in the art that both embodiments were not only covered by the claims, but within this exact language that the district court construed. Now, what IPS did is IPS copied exactly, almost blatantly, Figure 3 of the patent, the embodiment, which is specifically said... So you're saying, Mr. Campbell, the error of the district court was excluding the alternate embodiment, I guess that's reflected in Figure 3, from the claim scope. Exactly right. And where did Odie go wrong? It's kind of hard to say. What went wrong here? Odie did everything it possibly could to make it clear that Figure 3, that the alternate embodiment, not only was in Claim 1, but was within exactly that same claim language that Judge O'Malley construed, a first and second juxtaposed drain ports in the bottom wall. And in fact, IPS admits that Figure 3 does have two juxtaposed drain ports. Their question seems to be, are they in the bottom wall? And apparently, that's where the court went astray. What the court did is it ignored the expressed language, the definition in the patent. And what it did is it elevated its interpretation of Figure 3, of a drawing over the claims, and in fact, over the whole spec, and over the definition in the spec, and kind of took the invention out. Ignored what the invention was, which under Phillips is wholly incorrect. Ignored the invention and went down and interpreted one drawing. Now, there's two problems with that. First off, you shouldn't exalt the drawings over the spec, and definitely not over the invention. Secondly, the court misinterpreted the drawing. The drawing does show two juxtaposed drain ports. And in fact, IPS's brief in page 4 admits that the drawing, Figure 3, includes two juxtaposed drain ports. The only question then is whether it's in the bottom wall. Now, apparently, the court construed in the bottom wall to be a single horizontal plane. And in fact, that was the construction which IPS represented to the court is correct. Unfortunately, it can't be correct. We see the bottom wall in several of the figures, Figure 1 and Figure 3, and what it shows is a very complex, multidimensional bottom wall. In fact, the bottom wall on the left has a pedestal which is raised up, and on the right has an oblong opening to the wall around it which extends down below whatever this mythical horizontal plane is. In fact, the bottom wall can't be a simple planar structure because not only does it have the complexities that you're just referring to, but also the district court's interpretation of the drain ports as being in that cap. That cap is not part of any kind of a planar surface. The cap is an additional structural component which, as I read it, is interpreted as part of the bottom wall structure. Right. And if that's true, then why is the dividing wall 76 any different if indeed it, together with the oblong opening, defines first and second juxtaposed ports? Seems to me that either way it's the same. I would love to be able to answer your question, Your Honor, but I can't. In fact, I think that's what my co-counsel's got to answer. In fact, that's what Judge O'Malley could not answer. How are these different? They're not. If you're looking at the test cap, the test cap is actually above this horizontal plane. And if she's saying... And it's a separate piece. And it's a separate piece. That's added to the bottom wall. Just as you could argue, I suppose, that the dividing wall 76 is a separate piece that may or may not, I guess this is the subject of some possible dispute, but that if indeed it does interact with that oval opening, could form two separate drain ports. Well, in fact, that's exactly what the specification says. The specification says in two different parts that the oblong opening, in conjunction with the tailpiece, and specifically the wall 74, what it does is it forms the two drain ports, the two juxtaposed drain ports. And in fact, I mean, this really shouldn't be a discussion about what the bottom wall is because the patent defines the drain ports as being in the bottom wall when they're formed by the oblong opening in the tailpiece. So by definition, this should not be a dispute because the patent by itself says that when, in Figure 3, when you're using that embodiment, when you have the two drain ports formed by the oblong opening and the tailpiece, those drain ports are in the bottom wall, by definition. That's said exactly in the summary, by definition. And throughout, the patent describes the oblong opening being in the bottom wall. So if the oblong opening, in conjunction with the tailpiece, forms the drain ports, by definition, by logic, they have to be in the bottom wall. So again, where did this go wrong? I wish I could tell you. I've been over and over the opinion, and I assume IPS has counseled on this too. Neither of us can explain where the court really went astray. It seems that where the court went astray was that the judge ignored the specification and just focused on that one drawing. Let me ask you this. Is Figure 3 really an illustration of this alternative embodiment? Or is Figure 3 just an illustration of the first embodiment before the cap is put in place? Because the way I read the patent, it seems to me you've described an invention, you've set forth a preferred embodiment of the invention, and you've also made note of an alternative arrangement where you don't need this cap. But even in the alternative arrangement, you do need to find somehow first and second juxtaposed drain ports in the bottom wall. Yes, indeed. And as I understand your argument, you're saying that the claim is written to the full breadth of that invention and we're entitled to that scope of coverage and the district court should not have excluded any kind of a structure that a reasonable jury could find meets those limitations. That is exactly our argument, Your Honor. Because it seems to me it's confusing to argue that Figure 3 illustrates the second embodiment. It may not. I mean, you could conceivably have, could you not? First and second juxtaposed drain ports formed of any number of different pieces of structure independent of a cap. Well, I think it would be more accurate for us to say that Figure 3 is an example of the alternate embodiment. That's one way the alternate embodiment could have been constructed. You inject another level of confusion by characterizing that as an embodiment because one looks at Figure 3 and one has to wonder, does that wall 76 really come up to the level that it forms two separate ports? Because I think if it doesn't come up and doesn't form two separate ports, you don't have that. Well, Your Honor, I think that even if it doesn't completely come up you still have it because a drain port isn't necessarily this exact physical structure. A drain port is an opening. It's nothing but an opening into a passageway. But not one opening, it has to be two openings. Well, each drain port is a single opening into a single passageway. Here we have two passageways and two drain ports. Now the drain ports being only an opening it doesn't necessarily have to be this exact physical identifiable structure which forms a ring around it. An opening is nothing more than a doorway. It leads somewhere. So to the extent that the openings can be slightly above the elements, the passageways, that's not a problem. In fact, if that's how you're reading Figure 3 Figure 1 would be read the same way, or Figure 2, where you have the separate physical drain ports forming that test cap. In that environment, still the drain ports are slightly above that wall element. So they'd be slightly above the passageway. So the passageway doesn't have to be this physical meeting of that separating wall, the dividing wall. It just needs to lead into it. So Figure 3 is one environment of what was disclosed as an altered environment. It's one way of doing it, but the claim should never be read just to cover the exact two figures. But it says in the specification that Figure 3 shows again, Figure 1 before you put on the test cap. Yes. And so it doesn't say that this is a different embodiment without using the test cap at all. Well, it doesn't really matter because either way... But that wasn't the question. The question is what it says in the specification. Yes, the specification does say that, but in exactly the same place it talks about this altered embodiment not having the test cap, which is, in one example, what could be shown in Figure 3. So we're not trying to limit the invention to just Figure 2 and Figure 3, but it should be broad enough, of course, to at least encompass the two different embodiments that are disclosed. In fact, the Fed Circuit's president over and over recommends that the claimed construction should include the embodiments unless there's some kind of disclaimer. And we have the opposite of a disclaimer here. We have Odie, by definition, saying that these two juxtaposed draperies in the bottom wall are formed by the oblong opening and the divided wall. Okay. You're near the end. Let's hear from Mr. Yanni. I'm pleased to be here. I'm Joey Yanni. I'm here to represent the IPS in this matter. The Honorable Kathleen O'Malley did correctly analyze this matter. Just as a patent holder or a patentee has a right to have definitively claimed subject matter as its protected subject matter as its protected property, so too does the public have a right to be on notice of what exactly it is that the patentee is claiming as its property and not to treat it like as Judge O'Malley said, a nose of wax can be twisted and turned depending upon what it's faced with. But how is it a nose of wax if in fact the accused device directly tracks something which is a drawing in the specification? There isn't any stretch required there. Your Honor, I think you yourself hit it directly on the head with the first argument that I listened to this morning when you said if something were in the specification, what were the needs for the claims? It's what do the claims carve out as the meets and bounds of the invention that's claimed? And these my esteemed opposition too often hammers the term by definition and definitionally they didn't define, they didn't act as their own lexicographer in coming up with new definitions for common terms, common phrases. They didn't have to. They said figure three can have the test cap or you can omit the test cap and if you omit the test cap you have exactly the drawing as it's shown and how is that excluded from the claim? Your Honor, if you read Judge O'Malley's opinion it talks about two juxtaposed drain ports in the bottom wall and if you take a look at Fig. 1 that's exactly what you have, two juxtaposed drain ports in the bottom wall. Fig. 3 is not that. This is an alternative embodiment and if there's a vagueness in the patent if there are any vaguenesses in the patent this is perhaps an additional one because we'll have to wonder whether it is an alternative embodiment or it isn't an alternative embodiment. The record is replete with arguments by my own position that this was an alternative embodiment that this is an alternative embodiment but that they defined, they acted as their own lexicographer. They didn't. The moment, first of all they didn't say use means plus function language which would give them the broadened expansion that they seek. What they did was define structure. This is not a product by process claim. This is a structural claim and they're defining specific structures. What they're doing is defining two separate and distinct embodiments and they've said it many times. They're not defining it. It's already in the specification. Most of the cases that we see, the alternatives are not illustrated in the specification. It's right there. It's right in the middle. There are a couple of drawings directed to it. It's explained in the text as part of the flow. So I try to understand certainly these are alternative ways of achieving the two outlets but what is there that requires the claim to exclude what's shown in figure three? Let me clarify one thing. If you take a look at a couple of prior art inventions which they claim to have invented over are IPS inventions. IPS was a pioneer in this. Opie then came up with this distinction to accommodate the necessities and the needs of the market in the Southwest where there are swamp pools and drainage things not necessarily contemplated here. So it isn't as if we came into the market and started copying them. Indeed we were the pioneers in the market. The Umba patent which they Umba is the only witness I believe that took the stand at the Markman proceedings. He is an IPS employee of long standing and he was with us in attendance as the record will indicate. These are two alternative embodiments. They're clearly two juxtaposed openings for the drainpipes in the bottom wall in fig one. Fig three does not have that. Indeed it defines itself as a an alternative embodiment. Some vagueness talks about a pre-stage of fabrication or installation but they should not be bi-versional but vagueness be allowed to expand what it is they claim. Mr. Yanni even if figure three is not illustrated different embodiment and just a step along the way to the one disclosed embodiment so be it. The written description is not limited to the drawings or the described embodiments necessarily and here there is language in the written description that quite clearly unambiguously talks about the fact that the test cap 52 may be omitted. I'm reading from the patent middle of column four may be omitted and the oblong opening 50 in combination with the tailpiece instead may define the drain ports. And then later on I'm sorry in the previous page the middle of column two may be noted however that if a test cap is not used the oblong opening in the bottom wall in conjunction with the tailpiece may itself define the drain ports so it seems to me there is quite clearly statements in the written description setting forth that the first and second juxtaposed drain ports may take on any number of different configurations and it is and the claim uses the broad language first and second juxtaposed drain ports and it seems to me in said bottom wall in said bottom wall but it seems to me the district court correctly in the claim construction concluded that the first and second juxtaposed drain ports were two separate identifiable physical elements that are adjacent or near each other and I think it's very difficult to find fault with that claim construction in the bottom wall but nobody seemed to be arguing about that if you take a look carefully what they've done in their brief is use IPS structure and not the structure of figure 3 and I believe it's improper to use the accused device in doing the analysis for the Markman construction but while ignoring the accused device I'm just saying looking at the patent itself the patent itself provides full support for the language used in the claim which is entitled to the full breadth of what it says and it says first and second juxtaposed drain ports in the bottom wall and it seems to me that if the drain ports that are in the cap placed on the bottom wall meet that limitation then the drain ports formed by the opening together with the wall 74 equally meet that opening and that it's the follow on ruling that excluded excluded the embodiment seems to seems to me to be unsupportable if that were the case they would have then defined alternatively the drain ports defined by the web which your honor is referring to as Judge O'Malley referred to it a piece form integral with the receiver below the pipe below that extends from well I think there may very well be questions of fact if I finish your honor 54 and 56 if your honor's argument were true in that alternative embodiment drain ports 54 and 56 would have been utilized to designate the drain ports but they're absent in fig 3 instead what they talk about is the element below which cannot by implication be in the bottom wall or integral with the bottom wall because it talks about being welded onto and the web which divides the two passageways clearly contemplated even in fig 1. You don't have to illustrate an alternative embodiment and I'm not even I'm not even saying fig 3 is that an illustration of the alternative embodiment fig 3 is the construction shown there is one embodiment shown in all of these figures it's just fig 3 is that structure before the cap is placed on it doesn't necessarily it's not necessarily limited to or representative of the second embodiment no need to have an illustration for every embodiment no you don't but where you do you can't ignore it and that is what they've done here they have put a second embodiment into this that was probably for reasons of prior art if you take a look at Humber and some of the other prior art they couldn't have claimed it they couldn't have claimed it so what they did was put two embodiments they themselves have called them two embodiments and they didn't act as their own what they did was put in two separate and distinctive embodiments claim one and dedicate the other in conformity with this court's precedent there's no doctrine of equivalence question here so the dedication issue is a little bit of a red herring the question at hand is what is the proper scope of the claim and the question is whether the district court was correct in the second ruling in excluding a structure from consideration so as to take that away from the jury take a look at the second ruling Fig 3 is shown unlike their brief it would be on page 5 of the opinion Fig 3 shows a single there was an addressing of the issue of whether the web as it's called 76 or 72 comes up to the level of the bottom wall if I'm not mistaken there was a finding that it wasn't if it is not in the express written findings it was certainly in the oral findings of the court and what we've got here is are you talking about a finding with respect to the accused structure no I'm talking about a finding with respect to Fig 3 which is shown on page 5 of Judge O'Malley's subsequent opinion on the motion for clarification right here the the on the joint appendix it would be page JA 042 you see that right there there is an absence in that alternative embodiment of the reference to drain ports if they were acting as their own lexicographer they would have said that the capital had been taken out and this would be an embodiment in which the drain ports 54 and 55 were present you don't see that there what they do is instead talk of the alternative those numerals are missing I do believe from exhibit JA 042 they're clearly talking about an alternative embodiment despite some ambiguity to that extent what they say is that it may act as the um juxtaposed drain ports may or may not it certainly doesn't act as juxtaposed drain ports at the bottom wall and that was what the court addressed there is no need if every finding of fact if this were a jury verdict and we came up up here from a jury determination of this finding of fact every finding of fact does not have to be rehashed as a matter of fact if that is the finding of fact which must be necessary to uphold the district court's conclusion you should treat it as if it were a jury verdict there's no fact finding here this is coming up here on summary judgment after a stipulation so we're talking about questions of claim interpretation this is not a summary judgment this is a stipulation by everybody that after the Markman hearings the Markman trial if you would if the judge's interpretation was correct that the claims that their claim of infringement would be denied in trial if we came up by stipulated judgment this is not a summary judgment this was a stipulated judgment entered in your report's interpretation in Fig. 3 which is shown not in their brief but in Judge O'Malley's decision again it's joint appendix 042 page 5 of the opinion you see no reference to the alternatives 54 and 56 if their argument was to be accepted I'm trying to look J042 I've got J joint appendix of JA042 that's not that's not Judge O'Malley's opinion look at the back of the blue brief it's right here right I believe that is Judge O'Malley's opinion because JA042 looks like oh I see you're saying it's part of because I thought that was because JA042 looks like somebody's brief JA024 if you take a look if you take a look at Judge O'Malley's opinion at the very end of the blue brief two pages from the back insert bottom wall JA060 she makes the conclusion the first and second judge proposed insert bottom wall if you take a look at JA042 in their own illustration there is no reference to 54 and 56 if this were an alternative embodiment indeed that would be present if this were the same embodiment with the test capital indeed those two reference numerals would be present how it is I think there's an ambiguity but it should not be construed against the public it should be construed against the drafters this has clearly been referred to on numerous occasions as an alternative embodiment the moment you say alternative embodiment you're not acting as your own lexicographer what you're doing is describing two different structural compositions and you're claiming one and not claiming the other and that's what they've done here they've clearly claimed one and not claimed the other they have throughout the record referred to these this is an alternative embodiment to now belatedly try to reinvent the position I think is disingenuous this is for a variety of reasons Judge O'Malley should be affirmed on this she is correct you should treat the underlying factual determinations on appeal as if it were coming from a jury and if there's any evidence at all in the record from which a reasonable trier fact could conclude that the judge's opinion should be affirmed then you must not touch it that is the way findings of fact are to be treated it's only on questions of law now insofar as questions of what we can be left to view is what should be what should be I don't know what should be however what we do know is that there are certain factual decisions which underpin her determination and those must be left alone we can't just we can't I must say that that I'm finding your argument to be not helpful at all and in fact I'm quite disappointed not only with your argument but with the brief that you filed if you look at the joint appendix page 11 that's where the judgment appears the judgment says pursuant to the court's order of this date granting the party's joint motion for entry of summary judgment so there was a summary judgment it was made pursuant to the stipulation and it doesn't help to fight over something silly like that I'm sorry I didn't realize that it was a summary judgment it was a stipulation judgment see that as it may I think that's symptomatic of the presentation both here and in your brief and I suspect it's not a reflection of your abilities and perhaps it's just an indication of some of the issues in this case I just say in concluding that I'm disappointed and I did not find your brief helpful at all Mr. Yanni are you arguing that we could still rule in your favor and affirm judgment of non-infringement if we disagree with Judge O'Malley's claim construction I mean if in fact if we agree with the claim construction that's being urged by ODI then we'd have to send it back wouldn't we yes I mean there's no way we could put it this way if we agree with the claim construction urged by ODI we can't either enter judgment for ODI or judgment for you it would have to go back wouldn't it it would have to go back for a full trial reinstitution of counterclaims and affirmative defenses I I actually think that Judge O'Malley was correct in what she did I listened to the full argument I understand your argument I'm just saying though that if we there's no way we can direct the entry of judgment for someone the most we could do is if we agree with the claim construction would be to send it back I'm just saying I'm wondering at what point the disagreement with her claim construction is appropriate there are certain things that are findings of factual determinations well she effectively seemed to say that what's been called an alternative bodyment at two points in the spec wasn't in fact covered by the claims and that sort of claim construction question I think for instance like did it come up to the bottom of the wall and stuff that was addressed during the trial I think if we would like I can point I call it the trial the Markman hearing and the court made certain comments that they were not final findings and I guess I apologize I guess I guess I'm not in favor of a position especially when I've been successful with it in the district court I've had no offense in any way perhaps it was the motorcycle No offense intended but I thought you could have done a better job both in the brief and in addressing the merits but that would be that as it were Your Honor, I agree with you. Thank you Mr. Yannon Mr. Campbell Your Honor, I just have a couple brief points I guess the most important point is that even if this court were to find Judge O'Malley's claim construction to be correct it should still be remanded because the determination is whether Figure 3, whether an alternative bodyment like that would be claimed and under even in our interpretation even under Judge O'Malley's claim construction Figure 3 or that bodyment would still fall within that claim so that's even if regardless which way the court goes on the claim construction I thought there was an entry of judgment based on the claim construction and if we agree I mean haven't you stipulated that you lose if one accepts the O'Malley claim construction No, no we have not stipulated to that and in fact that's where counsel was strayed. What we stipulated to is that if Figure 3 is disclosed but unclaimed to subject matter then ultimately we would lose on infringement but it is our position and it's throughout the brief that even Figure 3 would still fall within Judge O'Malley's claim construction Now Mr. Yannon pointed out several times that we didn't include Figure 3 in our brief for some reason and cites the joint appendix 42 which actually is our claim construction brief or one of our briefs so what he seems to have the facts backwards there he argues that the prior art should somehow limit this there's no reason that the prior art should limit the invention. The court didn't go into that there's been no facts. He testified or he stated that Mr. Humber testified Mr. Humber didn't appear there he didn't testify these facts just don't appear there. Let me just make sure I understand what was stipulated to Judge O'Malley's construction really required separate courts isn't that right? And you have agreed that the accused device does not have separate courts No, we believe that the accused device does have separate courts. Well but then why did you agree to non-infringement? Only because Judge O'Malley went beyond her claim construction and said that Figure 3 represents disclosed but unclaimed subject matter. If that's disclosed but unclaimed subject matter there's nowhere we can go because under her interpretation she says that's not separate courts. That's what I mean. If you accept her claim construction you lose. Aren't you maybe making it a little more complicated? No, I don't think so because we feel Figure 3 falls within her claim construction and in fact according to her... No, but she said she said it's not maybe the point is we're just saying maybe there's just a semantic difference between claim construction and disclosed but not claimed OK The point of it is if we say if we agree let's put it this way, if we agree with what Judge O'Malley did with Figure 3 you lose. Yes. If we agree that's disclosed but unclaimed subject matter yes you're correct and that was the stipulation. And if we disagree it has to go back. Exactly. But the reason it would be unclaimed is because it doesn't have separate distinct courts. That is it shows it essentially without the cap. Yes, if it didn't that would be true but again the patent clearly specifically and OE could have done no more than it did conveying to the person of ordinary skill in the art that Figure 3 or such an embodiment does have two different train courts and going back to the patent in the summary of the invention it says that when you're using this oblong opening in conjunction with the end piece, the tail piece you have first and second juxtaposed train courts in the bottom wall. So there is no way to say that the court could have been correct in how she related Figure 3 into this. And I think that maybe by putting it before putting that before her claim construction that's where she went astray. Clearly the invention covers both and there was no disclaimer so we feel that we should be entitled to all the breadth of that. It shouldn't be limited to these embodiments or the preferred embodiment. Thank you. Okay. Thank you Mr. Campbell Mr. Yanni. The case is taken under submission. All rise.